UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


MICHAEL BRACKEN,

    Plaintiff,        Case No. 3:19-cv-00825-YY

  v.            OPINION AND ORDER

USAA GENERAL INDEMNITY COMPANY,
a Texas Corporation, d/b/a USAA,

    Defendant.

YOU, Magistrate Judge:

  *Pro se* plaintiff Michael Bracken brought this action against defendant USAA General Indemnity Company in Multnomah County Circuit Court (Case No. 19CV19058), and defendant timely removed. *See* Notice Removal, ECF #1. This court has jurisdiction over the action pursuant to 28 U.S.C. § 1332. Plaintiff alleges claims for (1) breach of contract, (2) "breach of good faith," and (3) "fraud by inducement." *Id.*, Ex. 1 ("Compl."), ECF #1-1.

  Defendant has filed a motion to dismiss under F.R.C.P 12(b)(6) for failure to state a claim. Mot. Dismiss ("Mot."), ECF #6. The court finds this matter suitable for decision without oral argument pursuant to L.R. 7-1(d)(1). For the reasons discussed below, the motion to dismiss is GRANTED. The First Claim is dismissed with prejudice, while the Second and Third Claims are dismissed without prejudice and with leave to amend.

1 – OPINION AND ORDER

**STANDARDS**

To state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a)(2). This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

A Rule 12(b)(6) motion tests whether there is a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Taylor v. Yee*, 780 F. 3d 928, 935 (9th Cir. 2015). To survive a Rule 12(b)(6) motion, "the complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In evaluating a motion to dismiss, the court must accept "all allegations of material fact as true and construe them in the light most favorable to the non-moving party." *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

Federal courts hold a *pro se* litigant's pleadings to "'less stringent standards than formal pleadings drafted by lawyers.'" *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam) (holding that a document filed *pro se* "is to be liberally construed"; a plaintiff "need only give the defendant fair notice of the claim and the grounds on which it rests") (citations and internal quotation marks omitted).

## BACKGROUND

This dispute arises out of an underinsured motorist ("UIM") policy issued by defendant to plaintiff. Plaintiff paid defendant an annual premium in exchange for UIM coverage of up to $500,000. Compl. ¶¶ 18, 20, ECF #1-1.

On March 31, 2016, plaintiff was riding as a passenger in a motor vehicle when it was struck from behind by another vehicle. *Id.* ¶ 5. Plaintiff claims he suffered injuries to his face, head, neck, and back in excess of $1,400,000. *Id.* ¶¶ 5, 13. Both drivers carried personal automobile insurance policies with limits of $100,000, and plaintiff accepted the tender of the limits of both drivers. *Id.* ¶ 6. Plaintiff filed a UIM claim with defendant seeking the maximum policy amount of $500,000. *Id.* ¶¶ 13, 23. Defendant denied plaintiff's request for payment and made plaintiff a settlement offer of $25,000. *Id.* ¶ 24.

On March 5, 2018, plaintiff filed a complaint in Multnomah County Circuit Court, *Bracken v. USAA General Indemnity Co.*, No. 18CV07587 ("*Bracken I*"), alleging a claim for "underinsured motorist benefits." *Bracken I* Compl., ECF #18-1. Plaintiff subsequently amended his complaint to allege a single claim for breach of contract. *Bracken I* Am. Compl. ¶ 15, ECF #7-1.

On January 11, 2019, plaintiff filed a motion to amend his complaint to add additional claims for "breach of good faith" and "fraud by inducement." Opinion 2, ECF #13, at 20. The court denied plaintiff's motion on April 5, 2019, finding that plaintiff waited ten months to file his motion to amend, trial was scheduled to begin on May 20, 2019, and defendant would be prejudiced if the amendment was allowed at such a late date. *Id.* at 3.

Thereafter, on April 26, 2019, plaintiff filed a second action in Multnomah County Circuit Court, *Bracken v. USAA General Indemnity Co.*, No. 19CV19058 ("*Bracken II*")), in

which he alleged the same facts and the same claim (breach of contract), almost verbatim, as the complaint in *Bracken I*. *Compare Bracken I* Am. Compl. ¶¶ 5-14, 20, ECF #7-1, *with* Compl. ¶¶ 5-13, 34, ECF #1-1. Plaintiff also added claims for "breach of good faith" and "fraud by inducement." Compl. ¶¶ 36-39, ECF #1-1. *Bracken II* was ultimately removed to this court and resulted in the instant case. Mot. 2, ECF #6.

On May 16, 2019, *Bracken I* settled after mediation. *Bracken I* Tr. Settlement Announcement, ECF #7-2, *see also Bracken I* Notice Intent Dismiss, ECF #7-3. The parties agreed to "$70,000 new UIM money for bodily injury" and that although the "settlement is not a settlement of 19-cv-19058," it "settles the bodily injury UIM part of that lawsuit." *Bracken I* Tr. Settlement Announcement 2, ECF #7-2. *Id.* On June 26, 2019, by stipulation of the parties, *Bracken I* was dismissed with prejudice. *Bracken I* Stipulated General J. Dismissal, ECF #18-2.

## DISCUSSION

### I. Requests for Judicial Notice

As a preliminary matter, the court considers the parties' requests for judicial notice. *See* Def.'s Req., ECF #7; Pl.'s Req., #13; Def.'s Req., ECF #18. "Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint, a court may consider evidence on which the 'complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.'" *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)); *see also* F.R.E. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

The parties ask the court to take judicial notice of various pleadings from *Bracken I*. These documents are a matter of public record and not reasonably subject to dispute. *See Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) (holding courts "may take judicial notice of records and reports of administrative bodies") (citation and internal quotation marks omitted); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (holding courts may take "judicial notice of court filings" in another case to determine what issues were presented and litigated); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment.") (citation omitted). Therefore, this court takes judicial notice of the parties' requested materials.

## II. First Claim—Breach of Contract

In his breach of contract claim, plaintiff alleges that "defendant breached its obligation under [its] policy by failing to pay underinsured motorist coverage benefits." Compl. ¶ 34, ECF #1-1. As defendant correctly asserts, the doctrine of claim preclusion bars this claim because plaintiff previously sued defendant in *Bracken I*, alleging breach of contract for unpaid UIM benefits, and that claim was dismissed with prejudice. Mot. 5, 9-12, ECF #6.

### A. Relevant Law Regarding Claim Preclusion

"Claim preclusion bars litigation of claims that were or could have been raised in a prior action . . . ." *Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007). "Claim preclusion requires (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Howard v. City of Coos Bay*, 871 F.3d 1032, 1039 (9th Cir. 2017) (citations and internal quotation marks omitted).

In determining whether there is identity of claims, this court looks to four factors: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992) (citation omitted). The four criteria "are not applied mechanistically" and "[t]he fourth criterion is the most important." *Howard*, 871 F.3d at 1039 (citation and internal quotation marks omitted). "[T]he inquiry about the 'same transactional nucleus of facts' *is the same inquiry* as whether the claim could have been brought in the previous action." *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1151 (9th Cir. 2011)) (emphasis in original). The Ninth Circuit has explained:

> If the harm arose at the same time, then there was no reason why the plaintiff could not have brought the claim in the first action. The plaintiff simply could have added a claim to the complaint. If the harm arose from different facts at a different time, however, then the plaintiff could not have brought the claim in the first action.

*Id.*. "Thus, '[w]hether two suits arise out of the same transactional nucleus depends upon whether they are related to the same set of facts and whether they could conveniently be tried together.'" *Howard*, 871 F.3d at 1039 (quoting *Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914, 918 (9th Cir. 2012)) (brackets in original).

"The dismissal of the action with prejudice constitutes a final judgment on the merits. . . ." *Int'l Union of Operating Eng'rs-Empl'rs Constr. Indus. Pension, Welfare & Training Tr. Funds v. Karr*, 994 F.2d 1426, 1429 (9th Cir. 1993). Privity exists when "a person [is] so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *United States v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008) (citation and internal quotation marks omitted).

B. Analysis

In *Bracken I*, plaintiff alleged an identical breach of contract claim as in this case, *i.e.*, that he was entitled to $500,000 under the terms of the UIM policy that he purchased from defendant due to injuries arising out of a March 31, 2016 motor vehicle collision. *Compare Bracken I* Am. Compl. ¶¶ 5-14, 20, ECF #7-1, *with* Compl. ¶¶ 5-13, 34, ECF #1-1. The claims in both cases involve the same evidence, the same rights, and, most importantly, the same nucleus of facts. Moreover, there is privity of parties; the parties in both cases are the same. And there is no question that final judgment on this breach of contract claim was previously entered when, based on the stipulation of the parties, the Multnomah County Circuit Court dismissed *Bracken I* with prejudice. *See Bracken I* Stipulated General J. Dismissal 1, ECF #18-2. If the breach of contract claim in this case is allowed to proceed, it is certain that the rights and interests that defendant has in that prior judgment will be destroyed or impaired. Thus, all of the elements of claim preclusion have been satisfied and the First Claim must be dismissed with prejudice.

III. Second Claim—"Breach of Good Faith"

In his second claim, plaintiff alleges that he "had a contractual relationship" with defendant, defendant "owed a duty to [plaintiff] to act in good faith and fair dealing," and defendant "failed to act in good faith and fair dealing by . . . disputing [plaintiff's] injuries when they had knowledge that the amount of damages suffered by [plaintiff] exceeded [plaintiff's]

policy amount." Compl. ¶ 36, ECF #1. The court construes plaintiff's claim for "breach of good faith" as a claim for "breach of the implied covenant of good faith and fair dealing."[1]

Under Oregon law,[2] "a claim for breach of the duty of good faith and fair dealing . . . 'sounds in contract.'" *Brockway v. Allstate Prop. & Cas. Ins. Co.*, 284 Or. App. 83, 95-96 (2017) (quoting *Employers' Fire Ins. v. Love It Ice Cream*, 64 Or. App. 784, 791 (1983) (holding that an insurance first-party bad faith claim sounds in contract)). "In other words, [a] claim for breach of the duty of good faith is a claim for breach of the insurance contracts." *Id.* Oregon courts have "long stated" that "there is an obligation of good faith in the performance and enforcement of every contract." *Best v. US Nat'l Bank of Or.*, 303 Or. 557, 561 (1987). "The purpose of that duty is to prohibit improper behavior in the performance and enforcement of contracts, and to ensure that the parties will refrain from any act that would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Sawyer v. ReconTrust Co.*, No. CV-11-292-ST, 2011 WL 2619517, at *9 (D. Or. May 27, 2011), *report and recommendation adopted*, 2011 WL 2610223 (D. Or. June 30, 2011) (quoting *Iron Horse Eng'g v. Nw. Rubber*, 193 Or. App. 402, 421 (2004)) (internal quotation marks omitted).

---

[1] Plaintiff refers to this claim variously as a "good faith and fair dealing" claim and a "breach of good faith and fair dealing" claim. *See* Compl. ¶ 36, ECF #1; Resp. 2, 3, 4, 5, 8, 9, 10, 11, ECF#15.

[2] Federal courts sitting in diversity apply state substantive law and federal procedural law under the Erie doctrine. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). A federal court interpreting Oregon law should "interpret the law as would the [Oregon] Supreme Court." *Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1209 (9th Cir. 2010) (alteration in original). "When interpreting state law, federal courts are bound by decisions of the state's highest court." *Alliance for Prop. Rights & Fiscal Responsibility v. City of Id. Falls*, 742 F.3d 1100, 1103 (9th Cir. 2013) (citing *Ariz. Elec. Power Co-op., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995)). If the state's highest court has not squarely addressed the issue, the federal court "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises and restatements for guidance." *Id.* at 1102 (citing *Glendale Assocs., Ltd. v. N.L.R.B.*, 347 F.3d 1145, 1154 (9th Cir. 2003)).

The duty "does not operate in a vacuum"; rather it "focuses on the 'agreed common purpose' and the 'justified expectations' of the parties, both of which are intimately related to the parties' manifestation of their purposes and expectations in the express provisions of the contract." *Oregon University System (OUS) v. Oregon Public Employees Union, Local 503*, 185 Or. App. 506, 515-16 (2002) (quoting *Best*, 303 Or. at 562-63). "The duty of good faith and fair dealing is to be applied in a manner that will effectuate the objectively reasonable expectations of the parties to the contract." *Brockway*, 284 Or. App. at 95-96 (citing *Klamath Off-Project Water Users v. PacifiCorp*, 237 Or. App. 434, 445 (2010)); *see also Morrow v. Red Shield Ins. Co.*, 212 Or. App. 653, 662 (2007) ("[T]he implied covenant of good faith and fair dealing does not vary the substantive terms of the contract or impose obligations inconsistent with the terms of the contract."). Otherwise stated, the "implied duty of good faith and fair dealing [cannot] be construed in a way that changes or inserts terms into a contract." *Safeco Ins. Co. v. Masood*, 264 Or. App. 173, 178 (2014). In the same regard, where a contract "expressly provides for a unilateral exercise of discretion, the duty of good faith cannot circumscribe that discretion." *Arnett v. Bank of America, N.A.*, 874 F. Supp. 2d 1021, 1033-35 (D. Or. 2012) (collecting cases); *see also Workshops Portland Carson, L.L.C. v. Carson Oil Co., Inc.*, No. 3:15-CV-01234-AC, 2017 WL 1115164, at *4 (D. Or. Mar. 24, 2017) (discussing *Arnett*); *Pac. First Bank v. New Morgan Park Corp.*, 319 Or. 342, 354 (1994) (finding the "terms demonstrate that the parties agreed to—that is, reasonably expected—a unilateral, unrestricted exercise of discretion").[3]

---

[3] "Notwithstanding that general principle, 'when a contract provides for discretion, but does not provide for a method of exercising that discretion, the duty of good faith and fair dealing may still apply.'" *Workshops Portland Carson*, 2017 WL 1115164, at *4 (citing *Arnett*, 874 F. Supp. 2d at 1034; *Best*, 303 Or. at 562-63). In *Best*, a bank had the contractual discretion to set fees, but the contract did not contain a method for setting the fee. 303 Or. at 561-62. "When one party to a contract is given discretion in the performance of some aspect of the contract, the

Thus, as defendant correctly contends, a claim for breach of the implied covenant of good faith and fair dealing can be merely duplicative of a breach of contract claim. *See Glob. Exec. Mgmt. Sols., Inc. v. Int'l Bus. Machines Corp.*, 260 F. Supp. 3d 1345, 1377 (D. Or. 2017) (dismissing claim for breach of implied covenant of good faith and fair dealing because "the alleged 'implied' terms and damages are duplicative of those asserted to be part of the express agreement"); *Sawyer*, 2011 WL 2619517, at *9 (holding that breach of covenant of good faith and fair dealing claim was duplicative of breach of contract claim).[4] Again, "[c]onduct consistent with the terms of the contract cannot serve as the basis of a claim of violation of the duty of good faith." *Marshall v. Wells Capital Mgmt. Inc.*, No. 07-309-HU, 2007 WL 4565164, at *9 (D. Or. Dec. 19, 2007); *see also Uptown Heights Assoc. Ltd. P'ship v. Seafirst Corp.*, 320 Or. 638, 645 (1995) (holding that "[a] party invoking its express, written contractual right does not, merely by so doing, violate its duty of good faith"). The duty "cannot contradict an express contractual term, nor otherwise provide a remedy for an unpleasantly motivated act that is

---

parties ordinarily contemplate that discretion will be exercised for particular purposes. If the discretion is exercised for purposes not contemplated by the parties, the party exercising discretion has performed in bad faith." *Id*. at 564.

[4] Other courts throughout the country also hold this view. *See*, *e.g.*, *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 n.6 (9th Cir. 2011) (noting that plaintiffs' claim for breach of the duties of good faith and fair dealing fails was duplicative of their breach of contract claim); *L & S Enterprises v. Sentinel Ins. Co.*, No. EDCV 16-1841-SVW-SPX, 2016 WL 10592208, at *2 (C.D. Cal. Oct. 24, 2016) (holding that "under California law[ ] a breach of the implied covenant of good faith and fair dealing is simply the recognized form of a tortious breach of contract claim against the insurer" and such a claim is "either non-existent, or at best duplicative"); *Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1341 (S.D. Fla. 2012) (holding that "[u]nder Florida law, a claim for breach of the implied covenant of good faith and fair dealing may be dismissed as redundant where it is based on the same allegations as those underlying the breach of contract claim") (citation and internal quotation marks omitted); *Arkansas Research Med. Testing, LLC v. Osborne*, 2011 Ark. 158, 3-4 (holding there is no cause of action for good faith and fair dealing apart from a breach of contract).

expressly permitted by the contract." *Zygar v. Johnson*, 169 Or. App. 638, 645 (2001) (citation omitted).

For example, in *Klamath Off-Project Water Users*, the parties entered into an agreement to purchase power, which was terminable at will. 237 Or. App. at 436. The defendant increased the rate, and the plaintiff sued. *Id.* The court held that the plaintiff lacked a claim for breach of implied duty of good faith and fair dealing because it "could not have had an objectively reasonable expectation that the company would never seek to modify or terminate the rate[,]" given there was "a complete absence of wording in the agreement suggesting that the terms of the agreement are perpetual" and "the agreement was terminable at will." *Id.* at 446.

Similarly, in *Brockway*, the court held that the plaintiffs had no objectively reasonable expectation that the insurance company would inform them of the two-year limitations provision that was set forth in the contract. 284 Or. App. at 97. The insurance company had informed the plaintiffs that it was investigating their claims and there was no evidence that it induced the plaintiffs not to commence legal action. *Id.*; *see also Veloz v. Foremost Ins. Co. Grand Rapids, Michigan*, 306 F. Supp. 3d 1271, 1281 (D. Or. 2018) (finding no good faith claim where defendant adopted a plausible yet ultimately incorrect reading of the contract language, because "a breach of the duty of good faith claim requires evidence of something beyond the mere breach of contract to proceed"); *Ri Ky Roofing & Sheet Metal, LLC v. DTL Builders, Inc.*, No. 6:17-CV-01251-JR, 2018 WL 1528790, at *3 (D. Or. Feb. 7, 2018), *report and recommendation adopted*, 2018 WL 1528756 (D. Or. Mar. 28, 2018) ("[B]ecause [the plaintiff] does not identify any facts evincing the breach of any objectively reasonable contractual expectation outside the express terms of the contract, the complaint does not currently state a plausible good faith claim."); *Uptown Heights*, 320 Or. at 645 (finding no claim for breach of good faith where the agreement

between the parties allowed the defendant bank the right to foreclose if the plaintiff defaulted on the loan, and the plaintiff did not plead that the bank caused the default to occur or failed to follow the proper method of foreclosure); *Pac. First Bank*, 319 Or. at 353 (finding no breach of duty of good faith where landlord withheld consent at its discretion as permitted by the unambiguous terms of the lease, and the landlord's actions did not contravene the "reasonable expectations" of the parties).

However, Oregon courts have recognized that "a party may violate its duty of good faith and fair dealing without also breaching the express provisions of a contract." *Elliott v. Tektronix, Inc.*, 102 Or. App. 388, 396 (1990) (citing *Best*, 303 Or. at 561 (holding that the plaintiff could recover for breach of obligation of good faith in the performance of the contract)). "Accordingly, . . . a claim for breach of the duty of good faith may be pursued independently of a claim for breach of the express terms of the contract." *McKenzie v. Pacific Health & Life Ins. Co.*, 118 Or. App. 377, 381 (1993); *see also Veloz*, 306 F. Supp. 3d at 1280 (recognizing that "[t]he claims of breach of contract and breach of the duty of good faith are distinct, and success on a breach of good faith claim does not require breach of the express or implied terms of the contract") (citing *Morrow*, 212 Or. App. at 662 (holding that the insurer was entitled to summary judgment on the plaintiffs' breach of contract claim but allowing a breach of the duty of good faith and fair dealing claim predicated on the same facts to proceed to trial)).

To sustain such a claim, "a plaintiff must assert conduct by the defendant that violated the plaintiff's objectively reasonable contractual expectations." *Marshall*, 2007 WL 4565164, at *9 (citing *Uptown Heights*, 320 Or. at 645); *see also Tolbert v. First National Bank*, 312 Or. 485, 494 (1991) (holding "it is only the objectively reasonable expectations of [the] parties that will be examined in determining whether the obligation of good faith has been met"); *Morrow*, 212

Or. App. at 662 (noting that "it is within the parties' reasonable expectations that, if the insured provides a change of address, the insurer will take action on that request, either by making the necessary change to the Declarations page or following up on the request"); *Thompson v. Allied Mut. Ins. Co.*, No. CIV. 99-1076-AS, 2000 WL 264318, at *1 (D. Or. Mar. 3, 2000) (holding that complaint sufficiently pleaded a claim for breach of good faith and fair dealing by alleging that defendants acted outrageously in falsely accusing plaintiffs of arson, threatening and intimidating plaintiffs, and falsely advising third parties that one plaintiff was an arsonist, burglar, and rapist). "There likely are cases where an insurer's interpretation of policy language is so patently unreasonable that denial alone could support a breach of good faith claim, but that is because an insurer's adoption of a truly beyond-the-pale interpretation of contractual language is evidence that the insurer was willing to disregard the objectively reasonable contractual expectations of the insured." *Veloz*, 306 F. Supp. 3d at 1281.

Here, plaintiff alleges that defendant "informed [him] that he should obtain not less than $500,000 in underinsured motorist insurance" and that it "would pay up to $500,000 in damages if he was ever in an accident in which the other driver's insurance was not sufficient to cover the cost of [plaintiff's] damages." Compl. ¶¶ 17, 18. He also contends that defendant "failed to act in good faith and fair dealing by . . . disputing the amount of [his] injuries when they had knowledge that the amount of damages suffered by the Plaintiff exceeded the Plaintiff's UIM policy amount." *Id.* ¶ 36. Notably missing, however, are allegations regarding the contractual terms of the UIM policy and how defendant violated plaintiff's "objectively reasonable contractual expectations" regarding the contract. *See Marshall*, 2007 WL 4565164, at *9 ("Conduct consistent with the terms of the contract cannot serve as the basis of a claim of violation of the duty of good faith."); *Zygar*, 169 Or. App. at 645 (holding that a claim for breach

of the covenant of good faith and fair dealing does not "otherwise provide a remedy for an unpleasantly motivated act that is expressly permitted by the contract"). "[B]ecause [plaintiff] does not identify any facts evincing the breach of any objectively reasonable contractual expectation outside the express terms of the contract, the complaint does not currently state a plausible good faith claim." *Ri Ky Roofing & Sheet Metal*, 2018 WL 1528790, at *3.

Defendant also argues that, to the extent plaintiff seeks noneconomic damages for this claim, such damages are not recoverable for breach of contract, unless the breach caused "physical injury, physical harm, or physical pain." Mot. 14-15, ECF #6. Defendant is correct—because a breach of good faith and fair dealing claim sounds in contract, the damages are limited to those that can be awarded for a breach of contract claim. *Pearson v. Provident Life & Acc. Ins. Co.*, 834 F. Supp. 2d 1199, 1206 (D. Or. 2004) (citing *Farris v. United States Fidelity and Guaranty Co.*, 284 Or. 453, 478 (1978)). Under Oregon law, "[t]he generally accepted rule is that emotional distress caused by pecuniary loss resulting from breach of contract is not recoverable." *Farris*, 284 Or. at 456.

> In actions for breach of contract, damages will not be given as compensation for mental suffering, except where the breach was wanton or reckless and caused bodily harm and where it was the wanton or reckless breach of a contract to render a performance of such a character that the defendant had reason to know when the contract was made that the breach would cause mental suffering for reasons other than mere pecuniary loss.

*Id*. (quoting Restatement (First) of the Law of Contracts § 341 (1932)); *see also Keltner v. Washington Cty.*, 310 Or. 499, 504 (1990) ("The generally accepted rule is that contract damages will not be awarded for mental suffering only, not attendant to or followed by an injury to the plaintiff.") (citing 5 Corbin, Contracts § 1076 (3d ed. 1964); III Farnsworth, Contracts § 12.17 (1990); Williston, A Treatise on the Law of Contracts § 1341 (3d ed. 1968)); *McKenzie*, 118 Or. App. at 381 ("When . . . the emotional distress is caused by physical harm that results from the

breach of contract, the case is different."); *Trout v. Umatilla Cty. Sch. Dist. UH3-Milton-Freewater (McLoughlin Union High Sch.)*, 77 Or. App. 95, 98 (1985) ("We know of no authority to support an award of damages for emotional distress on a breach of contract claim."). Thus, as well as failing to plausibly allege a claim for breach of the covenant of good faith and fair dealing, plaintiff has failed to sufficiently plead noneconomic damages for such a claim.

In his response, plaintiff asserts that "[t]he Breach of good faith and fair dealing claim is based not on the specific terms of the contract but based on the intent of the contract and violations of the Unfair Claims Handling Practice Act (ORS 746.230) (Act)." Resp. 2, ECF #15. However, Oregon courts have held that a violation of O.R.S. 746.230 "'does not give rise to a tort action.'" *Braun-Salinas v. Am. Family Ins. Grp.*, 665 F. App'x 576, 578 (9th Cir. 2016) (quoting *Employers' Fire Ins.*, 64 Or. App. at 791 (rejecting bad faith claim for refusal to pay fire insurance benefits in violation of O.R.S. 746.230)); *Richardson v. Guardian Life Ins. Co. of Am.*, 161 Or. App. 615, 624-25 (1999) (rejecting bad faith claim for refusal to pay disability insurance benefits in violation of O.R.S. 746.230 because such a violation was "not independently actionable").[5]

Finally, relying on *Georgetown Realty, Inc. v. Home Ins. Co.*, 313 Or. 97 (1992), defendant contends that Oregon law does not permit a tort action unless the parties have a special relationship, *i.e.*, "the allegedly [tortious] party is subject to a standard of care independent of the terms of the contract." Mot. 1, 8, ECF #6. However, "*Georgetown Realty* has no application here because that ruling has been limited to cases where a 'special fiduciary-like relationship'

---

[5] "[T]he Oregon Court of Appeals has also declined to recognize a common law negligence claim for failure to pay first-party insurance benefits." *Braun-Salinas.*, 665 F. App'x at 578 (citing *Strader v. Grange Mut. Ins. Co.*, 179 Or. App. 329, 335 (2002)); *see also Employers' Fire Ins.*, 64 Or. App. at 791 (holding that "an insurer's bad faith refusal to pay policy benefits to its insured sounds in contract and is not an actionable tort in Oregon").

15 – OPINION AND ORDER

exists between the insurer and insured due to the insured delegating authority to exercise judgment on its behalf." *Braun-Salinas*, 665 F. App'x at 578 (citing *Strader v. Grange Mut. Ins. Co.*, 179 Or. App. 329, 333-34 (2002); *see also Barnard v. State Farm Fire & Casualty Co.*, No. 3:17-CV-1340-PK, 2017 WL 6819887, at *3-4 (D. Or. Dec. 6, 2017), *report and recommendation adopted*, No. 3:17-CV-1340-PK, 2018 WL 325199 (D. Or. Jan. 8, 2018) ("Under Oregon law, an insured's bad faith claim against its insured will not lie in tort but rather sounds in contract, except where the gravamen of the claim is that the insurer acted in bad faith in connection with an extra-contractual duty of care owed to the insured . . . . '[T]he law implies a tort duty only when that relationship is of the type that, by its nature, allows one party to exercise judgment on the other party's behalf.'") (quoting *Bennett v. Farmers Ins. Co.*, 332 Or. 138, 161 (2001)); *Vail v. Country Mut. Ins. Co.*, No. 2:13-CV-02029-SU, 2015 WL 2207952, at *8 (D. Or. May 11, 2015) (observing that a special relationship did "not exist because defendant did not assume the duty to defend"; rather, "plaintiffs' claims are premised on defendant's refusal to provide the insurance benefits that they maintain are still owed under the Policy").

## IV. Third Claim—"Fraud by Inducement"

In his third claim, plaintiff alleges that defendant fraudulently induced him to enter into an insurance contract for UIM coverage and makes a claim for "fraud by inducement." Compl. ¶¶ 37, 38, ECF #1-1. The court assumes that plaintiff means a claim for fraud in the inducement. A claim for fraud in the inducement—which sounds in tort—"will lie for inducing a contract through a promise of future performance if the promise is made with the intent not to perform." *Strawn v. Farmers Ins. Co. of Oregon*, 350 Or. 336, 352 n.11 (2011).

Defendant moves to dismiss this claim because plaintiff has failed to plead the fraud claim with "particularity," as required by Rule 9(b). Mot. 10, ECF #6. Rule 9(b) provides that

"[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud[.]"  This requirement serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints "as a pretext for the discovery of unknown wrongs"; (2) to protect those whose reputation would be harmed as a result of being "subject to fraud charges"; and (3) to "prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."  *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir.1996) (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985)) (internal quotation marks omitted, brackets in original); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (holding that Rule 9(b) demands that the circumstances constituting the alleged fraud "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong") (citation, internal quotation marks, and ellipses omitted).

"Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Id.* (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).  Thus, when a plaintiff claims that a statement is false or misleading, the plaintiff must set forth "what is false or misleading about the purportedly fraudulent statement, and why it is false."  *Davidson v. Kimberly-Clark Corporation*, 889 F.3d 956, 964 (9th Cir. 2018) (citation and internal quotation marks omitted).  In other words, a party alleging fraud must "set forth *more* than the neutral facts necessary to identify the transaction."  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (emphasis in original).  "[M]ere conclusory allegations of

fraud are insufficient."[6] *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (citation omitted).

In the Complaint, plaintiff alleges generally that:

(1) Defendant knew that plaintiff "suffered damages in excess of the policy" yet "declined to pay [plaintiff] the full policy amount despite [defendant's] contractual and legal obligation to do so." Compl. ¶ 5, ECF #1.

(2) Defendant "knew at the time [plaintiff] purchased his insurance policy that [defendant] would deny any claim, would deny a full policy payment, would require [plaintiff] to take legal action to recover." *Id.*

(3) Defendant has a "policy, procedure or practice of denying all UIM claims and all UIM claims that request a full policy payment" because defendant "has calculated that it is more cost effective to deny or dispute the amount due under a UIM claim rather than to pay the amount requested. *Id.*

(4) Plaintiff bases the above on interactions with defendant "and information from [defendant] and other sources" through which plaintiff "became informed and does believe that [defendant] has in place a policy or practice of denying all [UIMs]." *Id.* ¶ 28.

Plaintiff alleges the following related to fraudulent inducement:

(1) Defendant induced plaintiff "to take out a larger insurance policy offering greater coverage, and pay a higher premium payment, knowing that [defendant] would not pay a full policy claim for any reason with[out] [sic] a court order." *Id.* ¶ 30.

(2) Plaintiff "reasonably relied upon" defendant's "intentional material promises" that it would pay up to $500,000 in UIM damages and that he was "harmed by [defendant's] material misrepresentations." *Id.* ¶ 37.

(3) Defendant "made false promises and material representations that [defendant] knew [it] would not keep or acted with reckless disregard for whether [plaintiff] would receive any of the benefits promised." *Id.* ¶ 38.

---

[6] "Conclusory" is defined as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based <because the plaintiff's allegations lacked any supporting evidence, they were merely conclusory>." *Conclusory*, Black's Law Dictionary (11th ed. 2019).

Plaintiff has failed to plead the who, what, when, where, and how of the alleged fraud. *Vess*, 317 F.3d at 1106. The Complaint does not identify any specific fraudulent statements, representations, or promises made by defendant, let alone who made such statements, when any such statements were made, or how the statements were made. Indeed, plaintiff's only explanation is that he "became informed" of defendant's allegedly fraudulent misconduct. Because this claim does not satisfy the Rule 9(b) requirement that "a party must state with particularity the circumstances constituting fraud," it must be dismissed.

Finally, defendant argues that fraud in the inducement is a tort theory that is generally not cognizable between contracting parties under Oregon law unless there is a "special relationship" between the parties, which plaintiff has not alleged. Mot. 6, ECF #6. However, as the Oregon Court of Appeals explained in *McNeff v. Emmert*, "the 'special relationship' rule expressed in cases like *Conway* [*v. Pacific University*, 324 Or. 231, 237-38 (1996)], and *Georgetown Realty* applies only to negligence claims, not to intentional torts like fraud." 260 Or. App. 239, 249 (2013); *see also Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts*, No. CV-01-1362-ST, 2002 WL 31974401, at *3 (D. Or. Nov. 4, 2002) (holding that a special relationship "is irrelevant to a fraudulent inducement claim").

## V. Leave to Amend

Plaintiff has requested leave to amend. Resp. 2, ECF #15. Dismissal of a *pro se* complaint without leave to amend is proper only if it is clear that the deficiencies cannot be cured by amendment or after the *pro se* litigant is given an opportunity to amend. *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248-49 (9th Cir. 1995) (per curiam). It is clear that the First Claim cannot be cured by amendment and, accordingly, must be dismissed with prejudice. *Cato v. U.S.*, 70 F.3d 1103, 1111 (9th Cir. 1995). Plaintiff may be able to cure the Second and Third

Claims and has not yet had an opportunity to do so. Accordingly, plaintiff is given leave to amend the Second Claim to allege a plausible claim for breach of the covenant of good faith and fair dealing and the Third Claim to allege fraud in the inducement with the particularity required by Rule 9(b).

## ORDER

For the reasons stated above, the parties' Requests for Judicial Notice (ECF #7, 13, 18) are GRANTED. Defendant's Motion to Dismiss (ECF #6) is also GRANTED. The First Claim is dismissed with prejudice. The Second and Third Claims are dismissed without prejudice and with leave to amend.

Plaintiff has 30 days from the date of this order to file an amended complaint. Failure to file an amended complaint within 30 days will result in dismissal of this case.

IT IS SO ORDERED.

DATED November 14, 2019.

                                                     /s/ Youlee Yim You
                                                   Youlee Yim You
                                                   United States Magistrate Judge